IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION


ERNEST RICHARDSON, JR.,   )
   )
            Petitioner,   )     Civil Action No. 3:09-160-SB-JRM
   )
v.   )
   )     **REPORT AND RECOMMENDATION**
   )
STATE OF SOUTH CAROLINA,   )
   )
            Respondent.   )
_____)


     Petitioner, Ernest Richardson, Jr., ("Richardson") is presently an inmate at FCI-Williamsburg

serving a sentence of 264 months imprisonment for being a felon in possession of a firearm in

violation of Title 18 U.S.C. § 922(g)(1) and 924(e)(1). *See* U.S. v. Richardson 95-cr-298-WBT.  He

has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on January 22,

2009, attacking a conviction for first degree burglary imposed in Oconee County.[1]  Respondent filed

a Return and Motion for Summary Judgment, supported by copies of the state court record, on June

17, 2009.  Because Richardson is proceeding *pro se*, an order pursuant to Roseboro v. Garrison, 528

F.2d 309 (4th Cir. 1975) was issued on June 18, 2009, advising him of his responsibility to respond

_____

[1]  The case was automatically referred to the undersigned pursuant to Local Rule
73.02(B)(2)(c) and (e) (D.S.C.).

to the Respondent's motion.  Richardson filed his response on July 14, 2009.

**BACKGROUND AND PROCEDURAL HISTORY**

There was bad blood between Richardson and Kevin "Red" Jackson ("Jackson').  According to Richardson's trial testimony, he and Jackson had an altercation on May 23, 1994, which resulted in an injury to him.  After the incident, Richardson was headed home and stopped at Jackson's residence in the Utica Mill Village.  A witness, who was next door at the time, testified that Richardson pulled into Jackson's yard, and after circling, left the vehicle, kicked in the door and entered the house.  No one was home.  Richardson admitted kicking the door and smashing some windows, but denied entering the house.

Richardson was arrested and charged with first degree burglary in violation of S.C.Code Ann. § 16-11-311.  He was represented by N. Gruber Sires, Jr., Esquire.  Richardson was convicted by a jury on January 11, 1995, and sentenced to twenty-five years imprisonment.

Richardson was indicted by a federal grand jury on March 1, 1995 for being a felon in possession of a firearm.  At arraignment on March 7, 1995, William Yarborough was appointed.  A superceding indictment was returned and Richardson entered a plea of guilty.  Thereafter, Russell D. Ghent, Esquire was appointed to represent Richardson, and the guilty plea was withdrawn.  Richardson proceeded to jury trial and was found guilty on May 20, 1996.  He was sentenced on June 3, 1996.  The conviction was affirmed by the Fourth Circuit Court of Appeals.  *See* United States v. Richardson, 116 F.3d 473 (4th Cir. 1997) (Table), 1997 WL 432610.

**1.  Direct Appeal of State Conviction**

Mr. Sires filed a timely notice of appeal.  The appeal was perfected by the South Carolina Office of Appellate Defense.  The following issue was raised:

The instructions did not adequately limit the jury's consideration of appellant's prior convictions in determining whether he was guilty of burglary in the first degree. The incomplete instruction diminished the state's burden of proof and deprived appellant of a fair trial.

It appears that the South Carolina Supreme Court transferred the case to the Court of Appeals. The Court of Appeals ruled:

> **PER CURIAM:** Ernest Richardson, Jr. appeals his conviction for first degree burglary, arguing the circuit court judge failed to adequately limit the jury's consideration of Richardson's prior burglary convictions. We affirm pursuant to S.C.Code Ann. § 14-8-250 (Supp. 1995), Rule 220(b), SCACR, and the following authorities: S.C.Code Ann. § 16-11-311 (Supp. 1995) (two or more prior convictions for burglary elevates the offense to first degree burglary); State v. Rabon, 275 S.C. 459, 272 S.E.2d 634 (1980) (a limiting instruction is adequate if it is substantially correct and adequately covers the law).
>
> **AFFIRMED.**

State v. Richardson, Unpub.Op.No. 96-UP-145 (Ct.App. filed May 14, 1996). Richardson's petition for rehearing was denied.

Richardson then filed a petition for writ of certiorari in the South Carolina Supreme Court raising the same issue. The Supreme Court granted the writ and ordered briefing. After review, the Supreme court dismissed the writ as having been improvidently granted. State v. Richardson, Mem.Op.No. 97-MO-123 (S.Ct. filed December 8, 1997).

Richardson then filed a *pro se* petition for writ of certiorari in the United States Supreme Court. The petition was denied on April 17, 1998.

**2. Post-Conviction Relief ("PCR")**

On November 10, 1998, Richardson filed a PCR application in the Court of Common Pleas for Oconee County (Richardson v. South Carolina, 98-CP-37-523). (App. 347). The State filed a return on May 3, 1999. Then, the case stalled until 2006. Clues for the delay can be found in a

hearing held by the PCR court on August 14, 2006, on the motion of appointed counsel, James

Brislane, Esquire, to be relieved. Richardson asserted that Mr. Brislane had a conflict of interest

because he was in practice with a person who was formerly an assistant solicitor in Oconee County.

Further, Richardson wanted to expand his PCR to include all "the wrongs visited on him by the state

system, attorneys, judges [and] the judicial process" from 1987 forward. (Supp.App.II, p. 7).

According to the State, Richardson had engaged in a tactic of manufacturing conflicts of interest with

his attorneys. (*Id.*, p. 10). Further, if the attorney refused to expand the PCR to include issues that

did not relate to conviction for first degree burglary, Richardson would file a grievance against the

attorney. (*Id.,* at pp. 10-11). The court denied the motion and scheduled the evidentiary hearing.

The evidentiary hearing was held on October 23, 2006. (App. 361). The court denied another

motion to have Mr. Brislane removed and a motion to continue the case. Trial counsel, Mr. Sires,

testified. Richardson refused to testify. (App. 457). At the conclusion of the hearing the court orally

denied the application. (App. 439). A written order of dismissal was filed on November 21, 2006.

(App. 455).

Mr. Brislane filed a notice of appeal. A <u>Johnson</u>[2] petition for writ of certiorari was filed by

the South Carolina Commission on Indigent Defense raising the following issue:

> Trial counsel erred in failing to object to the admission of state's exhibits numbered
> one, two, three and four into evidence as proof of petitioner's prior burglary
> convictions because the prejudice of the same outweighed any probative value
> therein.

Pursuant to state procedure, Richardson filed a lengthy *pro se* brief consisting of Appendices A, B,

and C. Appendix A contains an 89 page "Preliminary Statement" which reads like a William

---

[2]<u>Johnson v. State</u>, 364 S.E.2d 201 (S.C. 1988); *see also* <u>Anders v. California</u>, 386 U.S.
738 (1967).

Faulkner novel. It also contains a statement of "Fact" and a discussion of the South Carolina first degree burglary statute, S.C.Code Ann. § 16-11-312. It concludes with a statement that his conviction should be overturned, the burglary charge dismissed, and a criminal investigation should be conducted of the "named Officers of the Court stated within the Applicant's petition." (*Pro Se* Brief, p. 97). Appendices B and C contain exhibits, mostly correspondence and pleadings, most of which are irrelevant, pertaining to Richardson's long history.

The South Carolina Supreme Court granted certiorari on the PCR court's refusal to relieve Mr. Brislane and affirmed the denial of the PCR application. The court took the opportunity to admonish the trial bench to not routinely grant motions to relieve counsel in PCR matters. *See* <u>Richardson v. State</u>, 377 S.C. 103, 659 S.E.2d 493 (2008). The Remittitur was returned on April 10, 2008.

## **GROUNDS FOR RELIEF**

In his present petition, Richardson asserts that he is entitled to a writ of habeas corpus on the following grounds:

**Ground One:** Denied 6th and 14th Amendment to U.S. Constitution resulting in a "Miscarriage of Justice." "Conflict of Interest, deliberate act."

Supporting facts: Representation was in conflict adversely affecting the complete criminal process resulting in a miscarriage of justice. The violations deliberately constituted to deny petitioner a fair and impartial trial and wrongfully convict petitioner out of "retaliation" where petitioner exposed 1987 criminal wrongs in prior convictions also elements to this conviction. A conflict of interest then known by prosecutor and defense counsel but deliberately concealed to deny a fair trial.

**Ground Two:** Denied 6th and 14th Amendment to the United States Constitution resulting in a miscarriage of justice

Supporting facts: Petitioner clearly advised trial counsel stright[sic] up and through

hand written letters of his diminished capacity; Trail[sic] counsel was advised before trial, during trial and even after trial Petitioner could not think stright[sic] or remember clearly all that happened the day he was arrested. Furthermore, . . . did not know why he could not remember and could only remember some things others advised him of. Petitioner continued to advise trial counsel the only thing that continued to go through his mind was the death of his father.

**Ground Three:** Denied 6th and 14th Amendment to United States Constitution resulting in a miscarriage of justice

Supporting facts: Trial Counsel failed to communicate w/client; failed to develop attorney/client relationship; failed to allow client to make intelligent informed decisions is ineffective assistance; failed to inform client of pretrial hearing; the probable cause established and evidence being used by the State Prosecutor. Trial Counsel should have recused himself due to the continuing conflict of interest from prior convictions.

**Ground Four:** Denied 6th and 14th Amendments to the U.S. Constitution that resuled[sic] in a "Miscarriage of Justice." "(Also 4th, and 5th Amendment Violations)"

Supporting facts: Trail[sic] Counsel failed to investigate and subpoena witnesses who witnessed the questioning by arresting deputes[sic] subsequent to arrest and in violation of Miranda; Furthermore, failed to preserve and perfect for appeal; Trial counsel errored by placing accused on the stand knowing he could not remember what took place and could not think stright[sic]. Arresting deputes[sic] also violated 4th, 5th, 6th, and 14th Amendments to the U.S. Constitution where medical treatment was even impaired because of the questioning. (Deputies also lied under oath).

**Ground Five:** Denied 6th and 14th Amendment rights to the United States Constitution resulting in a Miscarriage of Justice

Supporting facts: a deliberate act to prejudice the jury by pacing accused on the Stand and advising him to lie under oath. This was constituted knowing accused was not able to be a part of the defense due to being impaired. Any and all acts were constituted in adverse to defendant's interest. This not only a crime but to assist with justifying representation under a conflict of interest in opposition to accused interest resulting in a wrongful conviction and thus constituting a Miscarriage of Justice.

**Ground Six:** Denied 6th and 14th Amendment to United States Constitutional Amendments resulting in a miscarriage of justice.

6

Supporting facts: Prosecutorial vindictiveness; the "evil eye and uneven hand" of State trial counsel, State Prosecutor, Sheriff Dept. Deputies. Et al. Denied Petitioner a fair trial by withholding evidence and facts that demonstrated reasonable doubt and actual innocence. Concealing the truth in-conjunction with the . . . facts that show innocence is further assisted by Conflict of Interest concealed along with the fact Petitioner was a target following the 1987 incident where Chief Magistrate was reprimaned.[sic] Acts of retaliation, and cover.

**Ground Seven:**    Denied 6th and 14th Amendment to United States Constitution resulting in a Miscarriage of justice.

Supporting facts: Counsel failed to properly investigate the incident where evidence would have shown a bleeding injury before arriving at the Jackson Residence. This was known by one piece and now by even more evidence that should have been known then by counsel and presented to the jury. Acts deliberately concealed from the jury that demonstrates actual innocence. The fact accused was then impaired only concealed and acts created to wrongfully convict the accused.

**Ground Eight:**    Denied 6th and 14th Amendments to the United States Constitution resulting in a "Miscarriage of Justice."

Supporting facts: Trial counsel was ineffective for presenting evidence that was not consistent with the testimony provided knowing it would only prejudice the jury when these cuts were revealed. The fact Petitioner had no memory and lead to believe different by Ronnie Todd prejudiced this case. Moreover, when placed on the Stand and advised to show the jury. Only one cut was from the Razor cut. The other was from the dashboard where petitioner hit the dashboard hard enough to enter and go through cuting[sic] his arm and hand.

**Ground Nine:**    Denied 6th and 14th Amendments to the United States Constitution resulting in a "Miscarriage of Justice."

Supporting facts: Trial counsel failed to object to prior indictments and present evidence showing how indictments was obtained from fraud. Furthermore, advised the Petitioner to take the stand and lie stating he plead guilty because he was guilty, and not how he was truely[sic] forced to plead guilty to prior charges under duress, intimination[sic] coercion and death threats of a female informate[sic] working with the Sheriff Department. Then the conflict of interest would not allow the truth and adverse affects prejudiced trial.

**Ground Ten:**    Denied 6th and 14th Amendments to United States Constitutional Amendments resulting in a Miscarriage of Justice.

Supporting facts: Trial counsel, under a conflict of interest, failed to make proper objections to Prosecutor's Leading witnesses through-out the complete trial where even some statements asked by the Prosecutor was asking the witness to state what the mind of another was thinking and what was going to be did[sic] by even another. These leading questions undermineing[sic] the jury and prejudiced the trail[sic] resulting in a miscarriage of justice.

**Ground Eleven:**     Denied 6th and 14th Amendment rights to the United States Constitution resulting in a Miscarriage of Justice.

Supporting facts: Trail[sic] counsel failed to have criminal indictment quashed where a written and signed Contract Agreement estoppeled[sic] any Prosecution when all facts are stemming from the retaliatory neglect of the Sheriff Dept. Officials and clearly related to the incident within the written agreement being paragraphs (4&5) supported by the rest of the contract agreement. See the agreement exhibit #71 supported by exhibits #71(1); #71(2)-(17); #71 (18) - (37); #71(38)-(40); #71(41)-(53)

## DISCUSSION

### A. Anti-Terrorism and Effective Death Penalty Act ("AEDPA") Statute of Limitations

Respondent asserts that the petition should be dismissed because it was not timely filed under the one-year statute of limitations created by the AEDPA. The AEDPA became effective on April 24, 1996. The AEDPA substantially modified procedures for consideration of habeas corpus petitions of state inmates in the federal courts. One of those changes was the amendment of 28 U.S.C. § 2244 to establish a one-year statute of limitations for filing habeas petitions. Subsection (d) of the statute now reads:

(d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is

removed, if the applicant was prevented from filing by such State action;

      (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

      (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

    (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

The one-year statute of limitations begins to run on the date the Petitioner's conviction becomes final, not at the end of collateral review. Harris v. Hutchinson, 209 F.3d 325, 327 (4th Cir. 2000). In South Carolina, a defendant must file a notice of appeal within 10 days of his conviction. Rule 203(b)(2), SCACR. Thus if a defendant does not file a direct appeal, his conviction becomes final ten days after the adjudication of guilt. Crawley v. Catoe, 257 F.3d 395 (4th Cir. 2001). If a defendant files a direct appeal and his conviction is affirmed, the conviction becomes final 90 days after the final ruling of the South Carolina Supreme Court. Harris, 209 F.3d at 328, n. 1 (conviction become final on the expiration of the 90-day period to seek review by the United States Supreme Court).

The statute of limitations is tolled during the period that "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). The statute of limitations is tolled for the entire period of the state post-conviction process, "from initial filing to final disposition by the highest state court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review)." Taylor v. Lee, 196 F.3d 557, 561 (4th Cir. 1999). Following the denial of relief in the state

courts in state habeas proceedings, neither the time for filing a petition for certiorari in the United States Supreme Court, nor the time a petition for certiorari is considered by the United States Supreme Court, is tolled." Crawley v. Catoe, 258 F.3d at 399. A state collateral proceeding must be "properly filed" for the statutory tolling provisions of 28 U.S.C. § 2244(d)(2) to apply. "(A)n application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." Artuz v. Bennett, 531 U.S. 4, 8 (2000) (footnote omitted). "When a post-conviction petition is untimely under state law, 'that [is] the end fo the matter' for purposes of § 2244(d)(2)." Pace v. DiGulielmo, 544 U.S. 408, 414 (2005) quoting Carey v. Saffold, 536 U.S. 214, 236 (2002).

Generally, computing periods of time under 28 U.S.C. § 2244(d)(2) is pursuant to Fed. R. Civ. P. 6(a). Hernandez v. Caldwell, 225 F.3d 435, 439 (4th Cir. 2000).

The Fourth Circuit has held that the statute of limitations in § 2254 is not jurisdictional, but subject to the doctrine of equitable tolling. Equitable tolling applies only in "those rare instances where–due to circumstances external to the [Petitioner's] own conduct–it would be unconscionable to enforce the limitation against the [Petitioner]." Harris, 209 F.3d at 330. Under § 2244(d), the State bears the burden of asserting the statute of limitations. Petitioner then bears the burden of establishing that his petition is timely or that he is entitled to the benefit of the doctrine of equitable tolling. Hill v. Braxton, 277 F.3d 701 (4th Cir. 2002). To benefit from the doctrine of equitable tolling, a petitioner must show: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way" preventing him from timely filing. Pace, 544 U.S. at 418. An attorney's mistake in calculating the filing date for a habeas petition relative to the

AEDPA's statute of limitations is not an extraordinary circumstance warranting equitable tolling. Lawrence v. Florida, 549 U.S. 327, 336-337 (2007) ("Attorney miscalculation [of a deadline] is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel."). *See also* Harris, 209 F.3d at 331.

Richardson's conviction became final on April 27, 1998, when his petition for writ of certiorari was denied by the United States Supreme Court. Smith v. Bowersox, 159 F.3d 345, 347-348 (8th Cir. 1998), *cert. denied* 525 U.S. 1187 (1999). By the time Richardson filed his PCR, November 10, 1998, 196 days of untolled time had lapsed. The statute of limitations was tolled until April 10, 2008, when the Remittitur was returned following denial of his petition for writ of certiorari relating to the PCR appeal. Richardson states in his petition that he delivered it for mailing in the institution on January 20, 2009. (Petition, p. 15). Assuming January 20, 2009, to be the filing date of the present petition, an additional 285 days of untolled time lapsed from the end of collateral review until the filing of the petition. Thus 481 days of untolled time lapsed between the date the conviction became final and the filing of the present petition.

Richardson filed a "Supplemental Petition for Equitable Tolling" on July 31, 2009.[3] Richardson asserts that he has been diligent and that "hardships and extraordinary circumstances beyond his control" caused the late filing of the present petition. (Supplemental Petition, p. 2). However, much of what Richardson argues took place during periods when the statute of limitations was tolled. Richardson does assert that he had to re-file his PCR after he discovered that the first PCR he mailed had not been filed. Accepting this as true, Richardson still had ample time to file his

---

[3]The Clerk fo Court has docketed this pleading as a motion for equitable tolling. (Doc. No. 36).

§ 2254 petition after his state collateral proceeding concluded.  Richardson asserts that he was transferred from state to federal custody at the end of 2007, and his research methods changed from books to computers.  He also asserts continued trouble in obtaining documents, most of which are irrelevant.

The undersigned concludes that Richardson has not shown that he is entitled to equitable tolling.

**B.  <u>Procedural Bar</u>**

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts.  The two theories rely on the same rationale.  The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

**1.  Exhaustion**

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions.  Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254, which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States."  The statute states in part:

> (b)(1)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
> > (A)  the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B)(i)  there is either an absence of available State corrective process; or
> >
> > (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court. *See* O'Sullivan v. Boerckel, 526 U.S. 838 ( 1999).

The United States Supreme Court has consistently enforced the exhaustion requirement.

> The exhaustion doctrine existed long before its codification by Congress in 1948. In Ex parte Royall, 117 U.S. 241, 251 (1886), this Court wrote that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act....

Rose v. Lundy, 455 U.S. 509, 515 (1982).

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. *See* SCACR 207(b)(1)(B) and Blakeley v. Rabon, 266 S.C. 68, 221 S.E.2d 767 (1976). The second avenue is by filing an application for post-conviction relief ("PCR"). See S.C. Code Ann. § 17-27-10 *et seq.* A PCR applicant is also required to state all of his grounds for relief in his application. *See,* S. C. Code Ann. § 17-27-90. A PCR applicant cannot assert claims on collateral attack which could have been raised on direct appeal. Simmons v. State,

13

264 S.C. 417, 215 S.E.2d 883 (1975). Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. The South Carolina Supreme Court will only consider claims specifically addressed by the PCR court. If the PCR court fails to address a claim as is required by S.C.Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. Marlar v. State, 375 S.C. 407, 653 S.E.2d 266 (2007). A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim.[4] Further, he may present only those claims which have been squarely presented to the South Carolina appellate courts. "In order to avoid procedural default [of a claim], the substance of [the] claim must have been fairly presented in state court...that requires the ground relied upon [to] be presented face-up and squarely. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick." Joseph v. Angelone, 184 F.3d 320, 328 (4th Cir. 1999) (internal quotes and citations omitted). If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts, Patterson v. Leeke, 556 F.2d 1168 (4th Cir. 1977) and Richardson v. Turner, 716 F.2d 1059 (4th Cir. 1983). If petitioner has failed to raise the issue before the state courts, but still has any

---

[4]In cases where the South Carolina Supreme Court applied a procedural bar, however, this court is directed to also apply that bar, except in certain limited circumstances. See discussion below on procedural bypass.

means to do so, he will be required to return to the state courts to exhaust the claims. *See* <u>Rose v. Lundy</u>, *supra*.

### 2. Procedural Bypass[5]

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, <u>Smith v. Murray</u>, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote

> not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

<u>Reed v. Ross</u>, 468 U.S. 1, 10-11 (1984).

---

[5]This concept is sometimes referred to as procedural bar or procedural default. If a petitioner procedurally bypasses his state remedies, he is procedurally barred from raising them in this court.

Although the federal courts have the power to consider claims despite a state procedural bar,

> the exercise of that power ordinarily is inappropriate unless the defendant succeeds in showing both 'cause' for noncompliance with the state rule and 'actual prejudice resulting from the alleged constitutional violation.'

Smith v. Murray, *supra*, quoting Wainwright v. Sykes, 433 U.S. at 84 (1977); *see also* Engle v. Isaac, 456 U.S. 107, 135 (1982).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing(s) of cause and prejudice, the federal courts generally decline to hear the claim. *See* Murray v. Carrier, 477 U.S. 478, 496 (1986).

### 3. Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner in this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts, and this court is barred from considering the claim (absent a showing of "cause" and "actual prejudice"). In such an instance, the exhaustion requirement is "technically met" and the rules of procedural bar apply. Matthews v. Evatt, 105 F.3d 907 (4th Cir. 1997); cert. denied, 522 U.S. 833 (1997) citing Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991); Teague v. Lane, 489 U.S. 288, 297-98 (1989); and George v. Angelone, 100 F.3d 353, 363 (4th Cir. 1996).

### 4. Excusing Default

The requirement of exhaustion is not jurisdictional, and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances.

Granberry v. Greer, 481 U.S. 129, 131 (1989). First, a petitioner may obtain review of a procedurally barred claim by establishing cause for the default and actual prejudice from the failure to review the claim. Coleman v. Thompson, 501 U.S. at 750 and Gary v. Netherland, 518 U.S. 152, 162 (1996). Second, a petitioner may rely on the doctrine of actual innocence.

A petitioner must show both cause and actual prejudice to obtain relief from a defaulted claim. In this context, "cause" is defined as "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." Strickler v. Greene, 527 U.S. 263, 283 n. 24 (1999) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986). A petitioner may establish cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, demonstrate the novelty of his claim, or show interference by state officials. Murray v. Carrier; Clozza v. Murray, 913 F.3d 1092 (4th Cir. 1990), cert. denied, 499 U.S. 913 (1991); and Clanton v. Muncy, 845 F.2d 1238 (4th Cir.), cert. denied, 485 U.S. 1000 (1988). Because a petitioner has no constitutional right to counsel in connection with a PCR application and/or an appeal from the denial thereof, he cannot establish cause for procedural default of a claim by showing that PCR counsel was ineffective. Wise v. Williams, 982 F.2d 142, 145 (4th Cir. 1992) cert. denied, 508 U.S. 964 (1993). A petitioner must show reasonable diligence in pursuing his claim to establish cause. Hoke v. Netherland, 92 F.3d 1350, 1354 n. 1 (4th Cir. 1996). Further, the claim of cause must itself be exhausted. Edwards v. Carpenter, 529 U.S. 446 (2000) (failure of counsel to present issue on direct appeal must be exhausted in collateral proceeding as ineffective assistance to establish cause for default).

Generally, a petitioner must show some error to establish prejudice. Tucker v. Catoe, 221 F.3d 600, 615 (4th Cir.), cert. denied, 531 U.S. 1054 (2000). Additionally, a petitioner must show an

actual and substantial disadvantage as a result of the error, not merely a possibility of harm to show prejudice. Satcher v. Pruett, 126 F.3d 561, 572 (4ᵗʰ Cir. 1997).

"Actual innocence" is not an independent claim, but only a method of excusing default. O'Dell v. Netherland, 95 F.3d 1214, 1246 (4ᵗʰ Cir. 1996), *aff'd*, 521 U.S. 151 (1997). To prevail under this theory, a petitioner must produce new evidence not available at trial to establish his factual innocence. Royal v. Taylor, 188 F.3d 239 (4ᵗʰ Cir. 1999). A petitioner may establish actual innocence as to his guilt, *Id.*, or his sentence. Matthews v. Evatt, 105 F.3d 907, 916 (4ᵗʰ Cir. 1997).

**5.    Procedure**

Procedural default is an affirmative defense which is waived if not raised by respondents. Gray v. Netherland, 518 U.S. at 165-66. It is petitioner's burden to raise cause and prejudice or actual innocence. If not raised by petitioner, the court need not consider the defaulted claim. Kornahrens v. Evatt, 66 F.3d 1350 (4ᵗʰ Cir. 1995), *cert. denied*, 517 U.S. 1171 (1996).

**C. Standard of Review**

Since Richardson filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. Lindh v. Murphy, 521 U.S. 320 (1997); Breard v. Pruett, 134 F.3d 615 (4ᵗʰ Cir.), *cert. denied,* 521 U.S. 371 (1998) and Green v. French, 143 F.3d 865 (4ᵗʰ Cir. 1998), *cert. denied*, 525 U.S. 1090 (1999). That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has addressed procedure under § 2254(d). *See* Williams v. Taylor, 529 U.S. 362 (2000). In considering a state court's interpretation of federal law, this court must separately analyze the "contrary to" and "unreasonable application" phrases of § 2254(d)(1).

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases .... A state- court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Court's] precedent.

> * * *

> [A] state-court decision involves an unreasonable application of [the Supreme] Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of [the] Court's precedent if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

*Id.* at 1519-20. Ultimately, a federal habeas court must determine whether "the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 1521.

### D. Ineffective Assistance of Counsel

Richardson generally alleges in Grounds 1, 2, 3, 4, 5, 7, 8, 9, 10 and 11 that his trial counsel, Mr. Sires, was ineffective. The PCR court addressed several claims of ineffective assistance of counsel even though Richardson presented no evidence at the hearing.

#### 1. Conflict of Interest

Richardson asserts in Grounds 1, 3, 5, 6 and 9 that Mr. Sires had a conflict of interest in representing him although he does not specifically identify or explain the conflict. Richardson appears to allege that Mr. Sires had some connection with his 1987 convictions which were

introduced into evidence as one of the statutory elements of first degree burglary. As mentioned above, Richardson has claimed that numerous attorneys had a conflict of interest in representing him going back to his 1987 convictions. This issue was not addressed by the PCR court, and it is procedurally barred. There is no evidence that Mr. Sires had a conflict of interest in representing Richardson.

### 2. Diminished Capacity

In Ground 2, Richardson appears to assert that Mr. Sires was ineffective because he did not request a competency hearing. The PCR court addressed this issue. Even though Richardson declined to testify at the PCR hearing, he had an extensive discussion on the record with the court concerning his motion to continue the hearing. The PCR court found that Richardson was competent to go forward with the hearing. (App. 384). The PCR court also credited Mr. Sires' testimony that Richardson had never been treated by a psychiatrist or psychologist and his mental state was never an issue. (App. 389). The PCR court found that Richardson's "competency was rightfully never called into question." (App. 460). Richardson presented no evidence as to his lack of competency.

### 3. Failure to Communicate

In Ground 3, Richardson asserts that Mr. Sires failed to adequately communicate with him which resulted in a failure to develop an appropriate attorney-client relationship, which would have allowed him to make intelligent and informed decisions about representation. There is no general right to a "meaningful attorney - client relationship." Morris v. Slappy, 461 U.S. 1 (1983). There is no constitutional requirement that counsel actually meet with a criminal defendant, although a failure to do so may result in ineffective assistance. Coles v. Peyton, 389 F.2d 224 (4th Cir. ), *cert. denied,* 393 U.S. 849 (1968). A habeas petitioner must show that the lack of communication resulted

in a defect in counsel's representation. <u>Hutchins v. Garrison</u>, 724 F.2d 1425 (4th Cir. 1983), *cert. denied,* 464 U.S. 1065 (1984).

The PCR court found that "Mr. Sires met with his client on numerous occasions" and "developed a viable trial strategy." (App. 460). Richardson has not shown that a lack of communication resulted in ineffective assistance of counsel.

### 4. Preliminary Hearing

In Ground 3, Richardson also appears to allege that Mr. Sires failed to inform him of a preliminary hearing and the evidence used to establish probable cause. This issue was not raised in the PCR. Instead, Richardson asserted that Mr. Sires failed to request a preliminary hearing. Based on Mr. Sires' testimony, the PCR court specifically found that Richardson "did have a preliminary hearing and Mr. Sires represented Applicant at that hearing." (App. 460-461). Richardson's new claim that Mr. Sires failed to inform him of the preliminary hearing is procedurally barred and without merit.

### 5. <u>Miranda v. Arizona</u>[6]

After the burglary, the arresting officers found Richardson at the hospital emergency room seeking treatment. He was arrested but not given <u>Miranda</u> warnings. He made certain statements. During the trial, counsel moved to suppress the statements and an *in camera* hearing was held. (App. 75). The officers testified that they did not questions Richardson, but that he voluntarily made the statements. Richardson testified that he was interrogated. The trial court found that the statements were voluntary and not the product of interrogation. The statements were admitted into evidence. (App. 95).

---

[6]384 U.S. 436 (1966).

Richardson asserts that Mr. Sires was ineffective for failing to investigate what happened at the emergency room to subpoena the doctors and nurses who were present who would have contradicted the officers' testimony. Richardson further alleges that counsel erred by (1) calling him to testify at the *in camera* hearing and (2) failing to preserve the issue for appeal.[7]

The PCR hearing, Mr. Sires testified that he decided not to subpoena the witnesses from the emergency room because they would have testified that Richardson was belligerent and gave them a hard time. (App. 388-389). The PCR court found that Mr. Sires made a valid strategic decision on this issue after discussing what transpired at the emergency room with Richardson. Mr. Sires' theory of the case was that Richardson was guilty only of malicious injury to property. (App. 458). The PCR court noted that Richardson produced no evidence that his <u>Miranda</u> rights were violated.

An attorney has a duty to make a reasonable factual and legal investigation to develop appropriate defenses. <u>Sneed v. Smith</u>, 670 F.2d 1348 (4th Cir. 1982). The reasonableness of the investigation is evaluated by the totality of the circumstances facing the attorney at the time. <u>Bunch v. Thompson</u>, 949 F.2d 1354 (4th Cir. 1991), *cert. denied*, 505 U.S. 1230 (1992). The Courts recognize limits to investigation based on time, resources, and relevance and conclude that "<u>Strickland</u> does not impose a constitutional requirement that counsel uncover every scrap of evidence that could conceivably help their client." <u>Green v. French</u>, 143 F.3d 865, 892 (4th Cir. 1998), *abrogated on other grounds* by <u>Williams v. Taylor</u>, 529 U.S. 362 (1998). A decision not to investigate a particular avenue of defense is assessed by the same standard of "reasonableness in all the circumstances" by which an attorney's performance is measured in other areas. <u>Strickland</u>, 466 U.S. 690-91. A petitioner asserting a claim of ineffectiveness of counsel in failing to investigate

---

[7]Richardson also suggests that the police officers lied in their testimony.

must make a showing that the failure was prejudicial. Generally, the failure to investigate and present a potential alibi witness supports a claim of ineffective assistance of counsel. However, at the PCR hearing, the petitioner must present evidence establishing what the witness would have said at trial. Bassette v. Thompson, 915 F.2d 932 (4th Cir. 1990), *cert. denied*, 499 U.S. 982 (1991).

Richardson has not shown that the failure to investigate and present witnesses from the emergency room was prejudicial.

### 6. Perjured Testimony

In addition to alleging that the police officers lied, Richardson asserts in Ground 5 that Mr. Sires was ineffective by placing him on the witness stand and "advising him to lie under oath." The record shows that prior to his trial testimony the Court thoroughly advised Richardson of his rights (App. 239-248) and that he expressed that he wished to testify in his case. (App. 243). The PCR court specifically found that "Mr. Sires never forced Applicant to testify and certainly never asked him to lie under oath." (App. 460). This conclusion is fully supported by the record.

### 7. Evidence of Blood

The investigation of the burglary showed that there was blood on the front steps of the Jackson residence and possibly on one of the broken windows. No blood was found inside the house. (App. 99-127). At trial Ronnie Todd ("Todd") testified that he was with Richardson when he was attacked by Jackson. According to Todd, Richardson received a puncture wound on his arm from the attack which caused bleeding. (App. 225). Richardson testified immediately after Todd. According to Richardson, his hand was badly cut during the altercation with Jackson. (App. 254). However, this was not corroborated by Todd.

In Ground 7, Richardson asserts that counsel was ineffective for failing to properly investigate

the altercation with Jackson and introducing evidence that he had "a bleeding injury before arriving at Jackson's residence." In Ground 8, Richardson asserts that Mr. Sires was ineffective because his testimony and that of Todd were inconsistent.

These claims are procedurally barred because they were not addressed by the PCR court. In any event, Todd verified that Richardson's arm was bleeding after the attack by Jackson. Mr. Sires effectively brought out that there was no blood inside the house.

### 8. Prior Indictments

Pursuant to S.C.Code Ann. § 16-11-311:

(A) A person is guilty of burglary in the first degree if the person enters a dwelling without consent and with intent to commit a crime in the dwelling, and....
       *                 *               *
(2) the burglary is committed by a person with a prior record of two or more convictions for burglary or housebreaking or a combination of both....

At trial the State introduced certified copies of four 1987 burglary convictions pursuant to the above statute. In Ground 9, Richardson asserts that Mr. Sires was ineffective for failing "to object to prior indictments and present evidence showing how [the] indictments was [sic] obtained from fraud."[8]

Under South Carolina law at the time of Richardson's trial in 1995, there was no basis to object to the introduction of the certified copies of Richardson's prior burglary convictions. *See* State v. Benton, 338 S.C. 151, 155-156, 526 S.E.2d 228 (2000) (holding that "the probative value of admitting the defendant's prior burglary and/or housebreaking convictions is not outweighed by its

---

[8]Richardson also asserts that Mr. Sires had him lie about voluntarily pleading to the indictments because he was guilty, implying that he was not guilty of the Jackson burglary. As discussed above, the PCR court found as fact that Mr. Sires did not have Richardson lie under oath.

24

prejudicial effects" under Rule 403, SCRE.).[9]  Richardson's contention that the 1987 burglary indictments were a part of "the wrongs visited on him by the state system, attorneys, judges [and] the judicial process" was found to be outside the scope of his PCR.  These claims were not addressed by the PCR court, and they are procedurally barred.

### 9.  Failure to Object

In Ground 10, Richardson asserts that Mr. Sires was ineffective because he failed to object to leading questions asked by the Solicitor.  However, he does not identify the portions of the transcript which he believes are objectionable.  This claim was not addressed by the PCR court, and it is procedurally barred.

### 10.  Federal Indictment

Although it is not entirely clear, Richardson appears to assert that Mr. Sires should have moved to quash the federal indictment which charged him with being a felon in possession of a  firearm because "a written and signed Contact Agreement estoppeled(sic) any prosecution." (Petition, Ground 11).[10]  In affirming the federal conviction, the Fourth Circuit recited the following facts:

> A prisoner receiving medical treatment, overpowered a deputy sheriff, stole the deputy's Glock automatic pistol, and escaped from the deputy's custody. The Sheriff, James Singleton, was aware that Ernest Eugene Richardson, Jr., the defendant in the present case, was acquainted with the prisoner who had escaped and stolen the firearm from the deputy.

---

[9]In State v. James, 355 S.C. 25, 583 S.E.2d 745 (2003) the South Carolina Supreme Court distinguished Benton and held that the trial court was required to perform a balancing test between the probative value and prejudicial effect of introducing prior burglary convictions under S.C.Code Ann. § 16-11-311(A)(2).

[10]There is nothing in the record to indicate that Mr. Sires represented Richardson on the federal charge.

The Sheriff approached Richardson about the return of the firearm. The Sheriff and Richardson, who was represented by counsel, entered into an agreement that the Sheriff would not charge Richardson "with any criminal offense whatsoever" for any crime "related to the return of [the] Glock." The Defendant, having previously sold the gun to his father at a poker game, knew where the gun was located. He stole the gun from his father and returned it to the Sheriff.

The Sheriff did not prosecute the Defendant. However, federal officials independently investigated the incident and learned that Richardson was a convicted felon and possessed the gun before the agreement was signed. Moreover, federal officials discovered that prior to the agreement with the Sheriff, Richardson entered a poker game and offered to sell the Glock to his father.

United States v. Richardson, 1997 WL 342610, *1.

The Fourth Circuit affirmed the conviction finding that the agreement between Sheriff Singleton and Richardson was not binding on the United States.

This claim was not addressed by the PCR court and it is procedurally barred. Further, there was no basis for Mr. Sires to attempt to quash the federal indictment. Once again Richardson argues that the federal charge was part of the "wrong visited on him" by the system.

### E.  **Prosecutorial Misconduct**

In Ground 6, Richardson alleges "prosecutorial vindictiveness", i.e. "(t)he 'evil eye and uneven hand' of State trial counsel, State Prosecutor, Sheriff Dept. Deputies - Et.Al." denied him a fair trial. In essence, Richardson alleges that the burglary charge, which is the subject of the present petition, was in retaliation and to cover up mis-doings from his 1987 convictions. This claim was not addressed by the PCR court, and it is procedurally barred.

### **CONCLUSION**

The present petition is untimely and should be dismissed for that reason. Most of Petitioner's

claims are based on his perception that everyone connected with the state and federal judicial systems sought to injure him for various reasons connected with his prior crimes and other events. Other than Petitioner's allegations, there is nothing in the record to support his theory. Petitioner did not testify at the PCR hearing so there is a lack of support for the claims addressed by the PCR court. Finally, as discussed above, many of his claims are procedurally barred. After reviewing the record, it is recommended that Petitioner's motion for equitable tolling be **denied**, and that Respondent's motion for summary judgment be **granted**.

_____
Joseph R. McCrorey
United States Magistrate Judge

February 17, 2010
Columbia, South Carolina

**The parties are referred to the Notice Page attached hereto.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk

United States District Court

901 Richland Street

Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).